UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| GEORGE T. HRICHAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 06-59-B-W |
| ) | |
| KENNEBEC COUNTY SHERIFF, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**Order on Motion to Exclude**

The defendants have moved to exclude plaintiff's expert witness, Dr. John Gregory, from testifying at trial on two grounds. (Docket No. 20.) They contend that a supplemental designation and report furnished by the plaintiff after the close of discovery and based on an examination conducted after Dr. Gregory's deposition must be excluded from trial. In addition, they ask the Court to exclude Dr. Gregory's testimony because he has not offered an opinion that would be sufficient to carry the plaintiff's burden of persuasion on the question of whether the assault allegedly committed by defendants more likely than not caused the plaintiff to develop Peyronie's disease. I grant the motion to exclude testimony concerning the post-deposition examination because the supplemental disclosure of the examination was untimely. I also preclude the plaintiff from attempting to introduce through Dr. Gregory any opinion testimony suggesting that the disease in question was more likely than not caused by the alleged assault.

**A.    The Supplemental Disclosure**

Plaintiff's counsel's disclosures regarding Dr. Gregory have been grudgingly and poorly presented from the start. I, as the judicial officer managing the discovery phase of this case, allowed his minimal disclosure to suffice, believing that the essential points had been covered in

the written disclosures and that the defendants' counsel would have a full opportunity to probe the basis of the doctor's opinion at his deposition. The plaintiff's December 12, 2006, disclosure (Docket No. 20, Elec. Attach. 3)[1] contained the following salient points regarding Dr. Gregory's medical opinion: (1) that the plaintiff has Peyronie's disease; (2) that the plaintiff's account of the assault "could account for the development of this condition"; and (3) that Dr. Gregory would "probably induce an erection . . . to show the deformity by means of an injection of papaverina." The third point becomes relevant to the disposition of this motion.

Apparently after some preliminary jockeying to find an agreeable deposition date for Dr. Gregory, it became necessary to seek yet another discovery extension. His deposition finally occurred on January 29, 2007. At the deposition it was revealed that Dr. Gregory had only met with the plaintiff on one occasion for fifteen minutes on October 23, 2006, more than two and one-half months after he had first been designated as the plaintiff's expert witness. As of the date of the January 29 deposition, Dr. Gregory had not yet fully examined the plaintiff, had not yet performed the test described in the December designation and had not yet fully reviewed the plaintiff's complete medical history. Plaintiff's counsel apparently suggested at the deposition that the doctor could perform the test right then and that the deposition could be resumed thereafter, but defendant's counsel objected to further medical examinations as the extended discovery deadline was looming on February 5 and she had prepared for the deposition based on the information then available. She quite reasonably took the position that the plaintiff had received more than sufficient time to prepare his expert for the deposition and that the expert should not now be allowed to conduct further tests and examinations. Notwithstanding the objection, Dr. Gregory conducted the proposed examination of the plaintiff the following day, on

---

[1] I will not repeat the history of the prior motion to exclude and the two prior and woefully inadequate disclosures made by plaintiff in the run up to the December 12 disclosure and the discovery extension granted as a result of that disclosure. Suffice it to say that the plaintiff's expert disclosure first came due in August 2006.

January 30, 2007, and reviewed additional medical records.  Plaintiff's counsel forwarded a supplemental copy of Dr. Gregory's medical records to defendants' counsel on February 19, 2007.  Plaintiff's counsel offers absolutely no reason for the inexcusable delay in obtaining an examination that was anticipated by at least the date of the December 12 supplemental disclosure.  Plaintiff's counsel's explanation for this lapse is as follows:

> The expert witness designation had, in fact, passed, but the Defendants cannot claim prejudice because the doctor had been allowed in **by the Court**.  Keep in mind that state and federal rules of evidence allow expert witnesses to keep gathering information up until the point of testimony, even allowing them to hear the testimony of other witnesses to help them determine their own final positions on any given topic.  It cannot be shocking that Dr. Gregory would wish to be as certain as possible that his diagnosis of the Plaintiff was correct.  His earlier diagnosis was primarily based on the diagnosis of Dr. Myra Altman, the Plaintiff's usual private physician, whose testimony will not be used.  An examination of the Plaintiff could have led to another diagnosis, and this would have cast the value of Dr. Gregory's testimony into doubt.
>
> It should be noted that the Defendants, as they themselves state (footnote on page 3), objected "because the deposition had been conducted."  The fact is that the deposition had not concluded at the time a physical examination was suggested by Plaintiff's counsel.  It was suggested that an examination take place that day with all parties present, prior to the end of the deposition; Defendants' counsel objected to that, and the examination was later set for the following day.  (Gregory deposition, page 27 lines 8 *et seq.*; the examination was set by doctor and patient after the testimony had ceased.)

(Pl.'s Opp'n Mem. at 2-3, Docket No. 31 (emphasis in original).)  First, I note that counsel has completely misconstrued the court's order of December 13, 2006.  Nothing in that order indicated that the doctor's testimony would be admissible at trial.  I simply allowed the designation to stand without further elaboration, subject to the defendants' right to seek further supplementation on specific points.  I also recognized that defendants' counsel probably intended to depose the doctor and would obtain a more substantive opinion during the deposition.

Rather than rejoicing in his good fortune and proceeding to properly prepare the case after I denied the defendants' first motion to exclude the witness, apparently the plaintiff and his

3

counsel took no further efforts vis-à-vis the expert witness. In a properly ordered universe that examination would have been conducted before the August 2006 designation and the defendants' counsel would have had the results to review in preparing for the deposition. In this case there were repeated delays in that schedule and I simply cannot understand why the examination was not the first item on the agenda after I ruled in the plaintiff's favor on the first motion to exclude. Indeed, if defendants' counsel had received word of the examination a reasonable amount of time prior to the scheduled deposition and had tried to have it somehow excluded on the grounds of prejudice, I would have denied the motion. However, it is completely inexcusable for the plaintiff to commence the deposition and then expect the defendants' counsel to agree to recess the deposition for a more thorough physical examination to be conducted on the eve of the extended discovery deadline. The plaintiff apparently has lost sight of the fact that the defendants convened the expert deposition at their expense in order to explore the expert witness's opinions regarding the plaintiff's medical condition. To cavalierly assert that they suffer no prejudice because there is enough time remaining prior to trial to redo the entire process not only palpably prejudices the defendants but it also makes a mockery of this court's scheduling order. Discovery closed in this case on February 5, 2007. Dispositive motions are pending before the Court. When they are resolved the case will be placed on the first available trial list. We are not at the point in the litigation where the plaintiff grooms his expert for a scheduled deposition.

      The plaintiff's argument that expert witnesses constantly reevaluate their opinions in light of new information is entirely true. However, the examination necessary to a proper diagnosis of this condition is hardly new information. There is irrefutable evidence in the record that the plaintiff knew, by December 12, 2006, at the very latest, that this examination was needed to

4

better develop his case.  There was absolutely nothing the defendant could do to cause the examination to take place.  The plaintiff simply did not bother to develop his case in the way he had proposed and thus prevented the defendant from having a reasonable opportunity to conduct a meaningful deposition within the timeframe allowed by the Court.  This examination does not arise from a change in the plaintiff's medical condition that would require the expert to supplement a prior report.  Nor does it arise from new information generated by the defense that would require Dr. Gregory to make an adjustment to his opinion.  Thus, the plaintiff's argument about expert witnesses "gathering information right up to the point of testimony" is entirely inapposite.  The particular examination under discussion in this motion was contemplated by the plaintiff as early as the December 12 designation.  It was the plaintiff's responsibility to obtain that examination within a timeframe that would enable the defendants to fully discover any resulting information and medical opinions within the discovery period.  Because there is no substantial justification for the plaintiff's failure to provide a full and complete disclosure of Dr. Gregory's January 30, 2007, examination within the extended discovery deadline and prior to the doctor's deposition, I now order pursuant to Rule 37(c)(1) that the plaintiff may not use at trial any information garnered by Dr. Gregory's January 30, 2007, examination.

**B.     The Causation Opinion**

The defendants seek to have Dr. Gregory's testimony excluded from trial on the separate ground that it is unreliable for purposes of Rule 702 of the Federal Rules of Evidence. Specifically, they argue that because Dr. Gregory's testimony is merely that physical trauma to the penis "could account for the development of [Peyronie's] disease," and that "there are other explanations that could also explain" the injury, his opinion is insufficient as a matter of law to

5

establish, by a preponderance of the evidence, that the alleged assault actually caused the plaintiff to develop this condition.  (Mot. to Exclude at 5.)

>Pursuant to Rule 702 of the Federal Rules of Evidence:
>
>If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The defendants' challenge is obviously warranted under the circumstances of this case.  Although a defendant might ordinarily assume that a plaintiff would not attempt to introduce at trial expert opinions that have never been disclosed, the discovery process in this case justified the defendants' motion to preclude the plaintiff from attempting to introduce a more persuasive opinion through Dr. Gregory.  Dr. Gregory cannot offer at trial an opinion that the alleged assault against the plaintiff's person probably, or more likely than not, caused the plaintiff to develop Peyronie's disease for the very simple reason that he has never disclosed such an opinion.  In fact Dr. Gregory could not make a medical diagnosis of Peyronie's disease until after he conducted the January 30 examination.  Whether analyzed under Rules 26 and 37 of the Federal Rules of Civil Procedure or under Rule 702 of the Rules of Evidence, the result is the same.  At most, based upon the December 12 disclosure, Dr. Gregory might testify that physical trauma of the kind alleged by the plaintiff could give rise to this disease, which is the sort of thing that may not be apparent to the average juror and, therefore, may be properly the subject of expert testimony.  However, there would be no evidence in the record[2] that plaintiff in fact was diagnosed with the disease and therefore the testimony would be of no relevance to this trial.

---

[2]   I would exclude any post deposition medical evidence and thus I do not consider that evidence in making this Rule 702 determination.

Plaintiff may testify at trial to his injuries and the pain he suffered and the problems he has had since the incident, but he cannot use Dr. Gregory's expertise to give those circumstances a name and a medical diagnosis.

## Conclusion

For the reasons stated herein, I **GRANT** the defendants' motion to exclude.  Dr. Gregory is precluded from offering at trial any testimony concerning information or opinions he obtained as a result of his January 30 examination of the plaintiff and the plaintiff is barred from attempting to introduce, through the testimony of Dr. Gregory, any evidence or opinion that the plaintiff's Peyronie's disease was more likely than not caused by the defendants' alleged assault against the plaintiff.

## CERTIFICATE

Any objections to this Order shall be filed in accordance with Fed. R. Civ. P. 72.

*So Ordered.*

Dated April 18, 2007

>/s/ Margaret J. Kravchuk
>U.S. Magistrate Judge