UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| GEORGE T. HRICHAK,<br>　　　Plaintiff<br><br>　　　v.<br><br>KENNEBEC COUNTY SHERIFF,<br>et al.,<br><br>　　　Defendants | )<br>)<br>)<br>)　Civil No. 06-59-B-W<br>)<br>)<br>)<br>)<br>) |

## AMENDED[1] RECOMMENDED DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT

George Hrichak has filed a civil rights complaint stemming from his encounter with Corporal Michael Pion, of the Kennebec County Sheriff's Office, on September 23, 2005. On that day Pion was responding to a report of an erratic driver (not Hrichak) at the Togus Veteran's Administration Hospital. The encounter between Hrichak and Pion began when Hrichak admonished Pion, then both in their respective vehicles, for going too fast through the Togus parking lot. Hrichak was eventually arrested and, ultimately, he pled guilty to disorderly conduct and obstructing a public way and no contest to carrying a concealed weapon.

In his amended complaint Hrichak sets forth three counts: Count One charges Pion, Deputy Michal Durham, who was called to Togus by Pion as back-up during the encounter, and Captain Jonathan Perkins with violating his First Amendment rights; Count Two charges Pion and Durham with using excessive force during Hrichak's arrest; and Count Three asserts that Sheriff Everett Flannery is liable for failing to adequately

---

[1] The only amendment is to correct the spelling of "Corporeal" in the second line on the first page to "Corporal".

train and supervise Pion, Durham, and Perkins, and that this negligence led to the violation of Hrichak's constitutional rights. The defendants' motion seeks judgment on the first and third counts of the amended complaint; the defendants concede that the second count alleging excessive force is not susceptible to judgment at this stage of the suit.

I conclude as to the Count One claim against Pion and Durham, that if the Court is inclined to overlook serious deficiencies in Hrichak's summary judgment practice, Hrichak has generated a genuine dispute of material fact to support his claim that his arrest was in retaliation for his exercise of his First Amendment right or his attempt to seek redress during his Togus encounter. Nevertheless, I conclude that Pion and Durham are entitled to qualified immunity on this claim. With regards to the Count One allegations against Perkins, Hrichak has fallen far short of defending the defendants' case for summary judgment as to his claim that Perkins stymied his attempts to seek redress for Pion's and Durham's conduct through the Kennebec County Sheriff's Office complaint process. As to Count Three, Hrichak concedes that he cannot generate a genuine dispute of material fact as to his failure to train and supervise claims and, therefore, judgment must enter in favor of the defendants on that count.

*Discussion*

*Summary Judgment Standard*

This Court recently summarized the summary judgment standard as follows:

> Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Santoni v. Potter, 369 F.3d 594, 598

>(1st Cir.2004). "Once the movant avers an absence of evidence to support the nonmoving party's case, the latter must adduce specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" Sheinkopf v. Stone, 927 F.2d 1259, 1261 (1st Cir.1991) (internal citation omitted). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir.2000) (citation omitted). In applying this standard, the record is viewed in the light most favorable to the nonmoving party. FDIC v. Anchor Props, 13 F.3d 27, 30 (1st Cir.1994).

Therrien v. Town of Jay, __ F. Supp. 2d __, __ 2007 WL 1040742, *4 (D.Me. Apr. 6, 2007).

The disposition of this motion for summary judgment is colored by Hrichak's failure to comply with District of Maine Local Rule 56 in that he has not responded to the defendants' statement of material fact by filing an opposing statement that admits, denies, or qualifies the defendants' statement of fact. See Dist. Me. Loc. R. 56(c). And there is no special reason to tolerate this shortfall because Hrichak is not proceeding pro se, compare Marcello v. Maine, __ F.Supp. 2d __, __, 2007 WL 1040810, * 5-7 (D. Me. Apr. 6, 2007), and there is really no excuse for Hrichak's counsel's failure to conform his summary judgment pleadings to the local rules. The defendants insist in their reply that their statement of fact must be deemed admitted by Hrichak.

Deeming admitted the defendants' facts does not mean that only their facts are in play; Hrichak has filed a separate statement of facts which is not entirely a statement of additional facts as many of his facts are redundant of those set forth by the defendants. I have done my best to cull the additional facts from this statement in setting forth the facts below although the task is not easy as Hrichak's facts seem to dispute the defendants' facts in some respect but it is hard to see how the different version of the facts in this

separate statement are meaningful/material with respect to the First Amendment issues generated by Count One. However, what is the real concern vis-à-vis Hrichak's Count One claims against Pion and Durham is the following. In his memorandum responding to the defendants' motion for partial summary judgment Hrichak refers to facts that he considers to be supportive of his opposition to the defendants' motion and, at points, he cites to record support <u>but</u> these facts and record support are not set forth in his statement of facts. Accordingly, these facts are not part of the summary judgment 'evidentiary' record recited below.[2]

***The Facts***

Everett Flannery, Jr. was the Kennebec County Sheriff from 2001 until December 31, 2006. (Defs.' SMF ¶ 1.) Jonathan Perkins has been a Captain of law enforcement at the Kennebec County Sheriff's Office since 2003. (<u>Id.</u> ¶ 2.) Michael Durham has worked for the Kennebec County Sheriff's Office since June 2003. (<u>Id.</u> ¶ 3.) Michael Pion worked for the Kennebec County Sheriff's Office for approximately three and a half years until he resigned in May 2006. (<u>Id.</u> ¶ 4.) Durham and Pion graduated from the Maine Criminal Justice Academy in 2004. (<u>Id.</u> ¶ 5.)

George T. Hrichak is a resident of Montville, Maine. (Pl.'s SAMF ¶ 1.) On September 23, 2005, he went to the Togus VA facility. (<u>Id.</u> ¶ 6.) On that day, Defendants Pion and Durham, in separate police cars, received a complaint of an erratic operator on Route 17 in the area of the Togus VA. (<u>Id.</u> ¶ 6; Pl.'s SAMF ¶ 7.) The report indicated that

---

[2] I am not inclined to systematically cull the facts that are supported by record citations from the memorandum as I do not think that this approach would be fair to the defendants. Because of Hrichak's sloppy approach to summary judgment practice the defendants have not been afforded the opportunity envisioned by the local rule to respond to these factual assertions. As will become clear below, there is one key factual dispute that Hrichak presses in his memorandum, with an accompanying citation to Hrichak's deposition, which Hrichak has failed to advance in his statement of facts.

4

the vehicle may have turned into the Togus VA. (Id. ¶ 7.) Durham and Pion searched the Togus VA property but did not find the vehicle in question. (Id.¶ 8; Pl.'s SAMF ¶ 8.) Durham left the Togus VA property before Pion. (Defs.' SMF ¶ 9; Pl.'s SAMF ¶ 9; Defs.' Reply Pl.'s SAMF ¶ 9.)

George Hrichak saw a police car coming out of the VA parking lot driven by Pion and Hrichak believed that Pion "was exceeding the speed limit by a considerable amount." (Defs.' SMF ¶ 10; Hrichak Dep. at 8, lines 1-3; Pl.'s SAMF ¶ 9; Defs.' Reply Pl.'s SAMF ¶ 9.)

As Pion's police car and Hrichak were on the road to exit the hospital grounds onto Route 17, the police car was in the center lane in order to make a left turn onto Route 17, and Hrichak was in the right-hand lane. (Defs.' SMF ¶ 11; Pl.'s SAMF ¶ 11.) Pion stopped his car because there was traffic in front of him waiting for a light. (Defs.' SMF ¶ 12.) Hrichak pulled alongside the police car, both drivers rolled down their windows, and Hrichak told Pion that he was going a little fast. (Id. ¶ 13; Hrichak Dep. at 8, lines 9-10, 9, lines 11-15; Pl.'s SAMF ¶ 10; Defs.' Reply Pl.'s SAMF ¶ 10.) Hrichak made this statement with a little "acid" in his voice. (Defs.' SMF ¶ 14.) Hrichak claims that Pion asked him if he had a radar device and he responded that he had an odometer. (Id. ¶ 15; Pl.'s SAMF ¶ 12.) According to the defendants Hrichak did not have his hearing aid on, so he could not hear everything that was said. (Defs.' SMF ¶ 16.) Hrichak stresses that despite not having his hearing aids on, he clearly heard Pion scream "Fuck you" at him. (Pl.'s SAMF ¶ 14.)[3] According to Hrichak, Pion told Hrichak that he "didn't have time for it." (Id. ¶ 13.)

---

[3] I think that Hrichak is attempting to state that there were two different times that Pion pulled forward and as he pulled forward to meet him and that when Hrichak was about to make a right-hand turn,

5

Pion proceeded on his way by driving forward toward the traffic light. (Defs.' SMF ¶ 17.) Hrichak stopped his vehicle in the road, walked to the cruiser, and asked Pion "who the fuck he thought he was talking to like that," and he demanded an apology. (Id. ¶ 19.) Hrichak was yelling and swearing while standing in the road. (Id. ¶ 20.) When Pion saw Hrichak stop his vehicle again, he radioed for Durham to come back. (Id. ¶ 21; Pl.'s SAMF ¶ 16.)

Pion perceived Hrichak to present an immediate threat when he got out of his car because Hrichak's reaction was not the normal reaction he expected from a member of the public towards a police officer. (Defs.' SMF ¶ 22.) Pion told Hrichak twice to get back into his truck or he would arrest him for disorderly conduct. (Id. ¶ 23.) Pion noticed that traffic was backing up at the intersection. (Id. ¶ 24.) There is no dispute that Pion threatened Hrichak with arrest unless Hrichak got into his truck. (Hrichak Dep. at 12, lines 22-25; Pl.'s SAMF ¶ 17; Defs.' Reply Pl.'s SAMF ¶ 17.) Hrichak claims that he was not told why he would be arrested. (Pl.'s SAMF ¶ 17; Hrichak Dep. at 12, line 17) and Pion claims that he told Hrichak that he would be arrested for disorderly conduct ( Pion Dep. at 18, lines 12-13). Hrichak refused to go back to his vehicle and he told Pion, "I'm not going anywhere until I get an apology from you." (Defs.' SMG ¶ 25.) Pion got out of his vehicle and walked around it toward Hrichak. (Id. ¶ 26.) At about that time, Durham arrived. (Id. ¶ 27.) Pion and Durham then arrested Hrichak. (Id. ¶ 28.) A search of Hrichak revealed what the defendants describe as a dagger and Hrichak describes as a knife underneath his shirt and an empty handgun holster. (Id. ¶ 29; Pl.'s SAMF ¶ 18.)

---

he claims he heard Pion yell, "Fuck you." (Pl.'s SAMF ¶ 18.) Given what is and is not put in material dispute in this motion for summary judgment, it is not at all clear to me how the exact logistics of the encounter and when the alleged expletive was uttered by Pion has any bearing on the determination of whether or not Hrichak's First Amendment rights were violated during this encounter.

Hrichak asserts that when he was arrested he was sprayed with OC spray and that the details of the arrest, the level of force used, and the effect of the OC spray on Hrichak are disputed. (Pl.'s SAMF ¶ 19; Defs.' Reply Pl.'s SAMF ¶ 19.) Hrichak states that he had a "spit hood" placed over his head after being sprayed. (Pl.'s SAMF ¶ 20; Defs.' Reply Pl.'s SAMF ¶ 20.) [4]

After Hrichak was handcuffed and placed in the back of Pion's police car, Pion transported Hrichak directly to the Kennebec County Jail. (Defs.' SMF ¶ 30; Pl.'s SAMF ¶ 21; Defs.' Reply Pl.'s SAMF ¶ 21.) Hrichak was charged with disorderly conduct, carrying a concealed weapon, refusing to submit to arrest, assault on an officer, and obstructing a public way. (Defs.' SMF ¶ 31.) Hrichak made bail and was released from jail the same day. (Defs.' SMF ¶ 32.)

After being released from jail, Hrichak walked to the Kennebec County Sheriff's Office with his wife and a friend named Douglas Medina, to make a complaint against Pion and Durham. (Id. ¶ 33; Pl.'s SAMF ¶ 23; Defs.' Reply Pl.'s SAMF ¶ 23.) Hrichak told "the woman at the desk" that he wanted to make a complaint. (Defs.' SMF ¶ 34.) Captain Perkins came out and spoke to Hrichak and Hrichak told him that he wanted to file a complaint. (Id. ¶ 35; Pl.'s SAMF ¶ 24; Defs.' Reply Pl.'s SAMF ¶ 24.) Perkins told Hrichak that he had an important meeting and asked Hrichak to write the allegations down and bring his written statement in on the following Monday.[5] (Defs.' SMF ¶ 36; Pl.'s SAMF ¶ 25; Defs.' Reply Pl.'s SAMF ¶ 25.) Perkins could not remember the subject

---

[4] The defendants move to strike the portions of these two statements of additional fact that pertain to what occurred during the arrest and the level of force used because this information is not material to the legal issues raised in their motion for partial summary judgment. I am not so convinced that evidence of physical reaction by a police officer to a complaining arrestee is irrelevant as to whether the decision to arrest was retaliatory.

[5] December 23, 2005, the date of the incident, was a Friday, although neither party has advanced this fact.

of the meeting or with whom he met. (Pl.'s SAMF ¶ 26; Defs.' Reply Pl.'s SAMF ¶ 26.) Based on advice from counsel, Hrichak never returned to the Sheriff's Office to bring in the written statement and he never followed up on the complaint. (Defs.' SMF ¶ 37.)

Hrichak pled guilty to disorderly conduct and obstructing a public way and no contest to carrying a concealed weapon. (Id. ¶ 38.) The other two charges were dismissed per a plea agreement. (Pl.'s SAMF ¶ 22; Defs.' Reply Pl.'s SAMF ¶ 22; Docket No. 28.)

As the Sheriff of Kennebec County, Everett Flannery had final decision making authority regarding policies and practices of the Kennebec County Sheriff's Office. (Defs.' SMF ¶ 39.) The Kennebec County Sheriff's Office Policy and Procedure Manual contained a general order on the subject of "Deadly Force, Non-Lethal Weapons and Firearms" which "provides deputies with guidelines for the use of deadly and non-deadly force." (Id. ¶ 40; see also Pl.'s SAMF ¶ 29; Defs.' Reply Pl.'s SAMF ¶ 29.) The Kennebec County Sheriff's Office Policy and Procedure Manual also contained a general order entitled "Complaints Against Law Enforcement Personnel" which "describes the procedure for making complaints against Sheriff's Office personnel" and a policy entitled "Complaints Against Police Personnel." (Defs.' SMF ¶ 41; see also Pl.'s SAMF ¶ 30; Defs.' Reply Pl.'s SAMF ¶ 30.)

Other than this particular case, there have been no prior occasions under which there have been allegations regarding the complaint procedure used by the Kennebec County Sheriff's Office. (Defs.' SMF ¶ 42.) Other than this particular case, there have been no prior allegations of excessive force against Defendants Durham or Pion. (Id. ¶ 43.) All deputy sheriffs employed by the Kennebec County Sheriff's Department, including Defendants Pion, Durham, and Perkins, receive training, which includes

8

instruction on the proper use of force, and law enforcement certification from the Maine Criminal Justice Academy. (Id. ¶ 44; see also Pl.'s SAMF ¶ 31; Defs.' Reply Pl.'s SAMF ¶ 31.) In addition, the Kennebec County Sheriff's Office periodically provides training to its deputies. At a minimum, the training includes that which is required by the Criminal Justice Academy, as well as training on Kennebec County Sheriff's Office Policy and Procedure Manual, which includes instruction on the proper use of force and the procedure for instruction on making complaints against law enforcement personnel. (Defs.' SMF ¶ 45.)[6]

*Count One- Violation of Right to Petition for Redress of Grievances*

The substantive allegations of Count One of Hrichak's complaint are:

> In reminding the officers that reckless operation of their cruisers is unsafe in a hospital zone in which there are disabled individuals about, the Plaintiff was exercising his right to speak freely to a representative of the government about a matter that concerned him. He exercised the same right when he repeatedly requested an apology from the officers for being subjected to vulgarity for no reason. He then attempted, without success, to exercise the same right when he spoke with Captain Perkins to inform him of the attack by the officers under his command.
> By threatening, arresting, and torturing the Plaintiff without just cause, Corporal Pion and Deputy Durham punished the Plaintiff for exercising both his right to free speech and his right to petition for redress of grievances, both rights that are as old as our nation itself. By virtually ignoring the Plaintiff's complaint rather than acting on it immediately, Captain Perkins in effect rendered useless the right to petition for redress of the grievances. As the supervisor of the officers involved, he had a duty to investigate wrongdoing on their part, and he failed in this duty.

(Am. Compl. ¶¶ 29, 30.)

---

[6] Hrichak asserts that after the incident with Pion and Durham, Hrichak has decreased vision, decreased range of motion, missing teeth, and has been diagnosed with Peyronie's Disease; his diagnosed PTSD has also worsened. The Plaintiff had pictures of himself taken, and the Defense asked the Plaintiff about the pictures at his deposition. (Pl.'s SAMF ¶ 27.) Hrichak was examined by Dr. John Gregory briefly in October 2006 and again at greater length on January 30, 2007, one day after the doctor was deposed. (Pl.'s SAMF ¶ 28.) Again, the defendants move to strike, stating that these two statements of additional fact are not material to the legal issues raised in their motion for partial summary judgment. Although I earlier conclude that evidence as to the nature of the force used during the arrest is relevant to Count One, I agree with the defendants that these paragraphs are immaterial to the issues raised by this motion.

### *Alleged Pion and Durham Retaliation*

The defendants argue that Pion and Durham are entitled to judgment on Count One because Hrichak's exercise of his First Amendment right – in challenging Pion for his excessive speed and seeking an apology from Pion for his alleged vulgarity – was not the reason that he was arrested. They cite to Tatro v. Kervin, 41 F.3d 9 (1st Cir. 1994) which explained:

> The plaintiff's standard of proof in a § 1983 action alleging First Amendment violations by [an arresting] police officer has never been explicitly addressed by this circuit. Other circuits considering the matter, however, have adopted standards from the employment discrimination context. See, e.g., Sloman v. Tadlock, 21 F.3d 1462, 1471 (9th Cir.1994); Mozzochi v. Borden, 959 F.2d 1174, 1179 (2d Cir.1992). This Circuit has consistently applied a "but for" standard in mixed motive employment discrimination cases, see, e.g., Loeb v. Textron, Inc., 600 F.2d 1003, 1019 (1st Cir.1979), and we see no reason why this standard should not also apply here.
> …. As in the employment discrimination context, the plaintiff need not prove that the defendant's sole motive was to chill the plaintiff's protected expression. The plaintiff need only show that the officer's intent or desire to curb the expression was the determining or motivating factor in making the arrest, in the sense that the officer would not have made the arrest "but for" that determining factor.

Id. at 18 (footnotes omitted). See also Crawford-El v. Britton, 523 U.S. 574, 593 (1998).

The defendants point to the undisputed facts that Hrichak had stopped his truck in the intersection in a manner that blocked traffic, got out of his truck, and refused to return to his truck. Hrichak has not placed these facts in dispute. There is also no factual dispute that Hrichak pled guilty to disorderly conduct and obstructing a public way and, as the First Circuit indicated in Napier v. Town of Windham, 187 F.3d 177, 184 (1st Cir. 1999), the 42 U.S.C. § 1983 plaintiff with a claim postured as is Hrichak's cannot challenge the facts essential to a criminal conviction. Furthermore, the defendants argue that the absence of probable cause for an arrest is a required element of a claim alleging

10

retaliatory arrest, just as it is for a claim alleging retaliatory prosecution as indicated in Hartman v. Moore, 547 U.S. 250, __, 126 S. Ct. 1695, 1706-07 (2006).

> Hrichak responds:
>
> While the Plaintiff was not arrested for speaking to Pion about his reckless driving, he was subjected to the use of vulgar language, leading to his exercise of his right to petition – namely, approaching Pion and requesting an apology.  It can be argued that Pion's vulgar comment constituted the beginning of the assault on the Plaintiff's First Amendment rights.  The vulgarity contained an implied message that Hrichak should not speak to the sworn law enforcement officer about the reckless driving, regardless of his right to do so.

(Pl.'s Mem. Opp'n Mot. Summ. J. at 3-4.)   He stresses "that he would not have been arrested except of the fact that he was going to report the unprofessional conduct of Defendants Pion and Durham to the federal authorities."  (Id. at 5-6.)

And here is the rub caused by Hrichak's Local Rule 56 shortfalls. In his memorandum in opposition to summary judgment Hrichak claims that he was not arrested until he told the officers that they were acting extremely rudely, Hrichak demanded an apology, and Hrichak told the officers that he would report the incident to the VA police.  (Pl.'s Mem. Opp'n Summ J. at 4.)  However, Hrichak has not taken the trouble to include these factual assertions in the summary judgment record.  Hrichak states that the defendants' argument that Hrichak would have been arrested regardless of the exercise of his First Amendment rights is 'probably correct if one accepts the version of events that the Defendants propose, but there is a vast difference in the accounts told by the Plaintiff and Pion and Durham."  (Id.)   In his deposition Hrichak testified that Durham came on the scene and it became apparent to Hrichak that things were "beginning to escalate."  (Hrichak Dep. At 13.)   Hrichak said "who's in charge here, and Officer Pion unfortunately was in charge."  (Id. at 13-14).  Hrichak testified:

11

> He had a little … corporeal insignia on his collar which he dramatically shoved forward towards me and said you were in the fucking army, just like that, and I turned at that point and said I'm going to get the VA cops, and I turned to walk away and that's when they both attacked me.

(Id. at 14.) This is the portion of Hrichak's deposition that he cites in his memorandum but he did not take the trouble to set forth this fact in his statement of fact which would have allowed the defendants to respond in accordance with the summary judgment practice in this District.

If the defendants are correct in their argument that the no-probable-cause pleading and proof requirement of Hartman applies to claims of retaliatory arrests then they would be entitled to judgment on Hrichak's Count One claims against Pion and Durham, even if there was no dispute over whether Hrichak's memorandum factual assertion is cognizable. The fact that the First Circuit has yet to consider this question of whether or not Hartman's pleading-and-proof rule applies to claims of retaliatory arrest, does not, as Hrichak argues, mean that the defendants "are attempting to introduce new law into the First Circuit to minimize the wrongs done by Defendants Pion and Durham. (Pl.'s Mem. Opp'n Mot. Summ. J. at 6.)[7] There is a Circuit split on the question of whether or not, what is now the Hartman rule, of pleading and proving the absence of probable cause applies to retaliatory arrests. Compare Dahl v. Holley, 312 F.3d 1228, 1236 (11th Cir.2002); Keenan v. Tejeda, 290 F.3d 252, 261-62 (5th Cir.2002), Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir.2001), and Smithson v. Aldrich, 235 F.3d 1058, 1063 (8th Cir.2000) with Greene v. Barber, 310 F.3d 889, 895 (6th Cir.2002) and DeLoach v.

---

[7] Hrichak also makes a frivolous argument regarding the dismissal of the other two charges against him – which were done in the context of a plea agreement – contending that this is evidence of the arresting officers' motives. (Id. at 6-7.) He also drops a strange suggestion that Hartman might not apply to this action because it was a "federal case involving federal officials" (id. at 7), but, although Hartman was indeed a Bivens action, the Court made it clear that the reasoning applies to 42 U.S.C. § 1983 claims.

Bevers, 922 F.2d 618, 620 (10th Cir.1990); see also Skoog v. County of Clackamas, 469 F.3d 1221, 1232 -35 (9th Cir. 2006) (addressing and rejecting, post-Hartman, the plead-and-prove rule regarding a claim of retaliatory seizure).  I am simply not convinced that the rationale of Hartman applies to a claim such as Hrichak's against the arresting officers involved in a spur-of-the-moment, warrant-less arrest. First, when the motivation under scrutiny is the officers' who are making an on-the-spot decision to arrest, there is really not a "distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation."  Hartman, 126 S.Ct. at 1704.  Second, "the difference in the requisite causation between the defendant's retaliatory animus and the plaintiff's injury" is no "more complex than it is in other retaliation cases," id. at 1704, as there is no need to build "a bridge" between the probable cause decision-maker and the complained of act of retaliation, compare id. at 1704-06.

This leaves the Court with the undisputed evidence that there was probable cause to make the arrest for, at a minimum, disorderly conduct and obstructing a public way, evidence that is indisputably highly probative of the defendants' argument that the arrest "would have occurred even without a retaliatory motive," Hartman, 126 S. Ct. at 1704. Furthermore, there is no genuine dispute that Hrichak had stopped his truck in the intersection in a manner that blocked traffic, got out of his truck to confront Pion, and refused to return to his truck even after he was expressly told that he would be arrested if he did not get back into his truck.  It is also undisputed that Pion had called for Durham's back-up prior to Hrichak's alleged statement about seeking the assistance of the VA police.  Nevertheless, under Hrichak's version of the disputed events a factfinder could find the motivating factor, the "but-for" event for the actual arrest, was his statement that

he intended to report the officers to the federal authorities at Togus. If a factfinder were persuaded of this fact, then under existing precedent the arrest could be seen as retaliatory under the First Amendment.

One issue remains. Even if Pion and Durham, under one version of the facts, were motivated by a desire to retaliate against Hrichak because of his threat to complain to federal authorities, they still claim they are entitled to qualified immunity for their actions because of the probable cause for the arrest.

"The Supreme Court explained the process for determining qualified immunity in Saucier v. Katz, 533 U.S. 194 (2001)":

> Saucier held that a court first must determine whether "the facts alleged show the officer's conduct violated a constitutional right." Id. at 201. Second, the court must determine whether the right was "clearly established" so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02, 121. The Supreme Court emphasized that the constitutional question must be decided before determining whether the right was clearly established to facilitate the elaboration of the law. See id. at 201.

Jennings v. Jones, 479 F.3d 110, 118 (1st Cir. 2007). The First Circuit has "typically applied Saucier using a three-part test," inquiring:

> (1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right.

Id. (citing Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 141 (1st Cir.2001) and Wilson v. City of Boston, 421 F.3d 45, 52 (1st Cir.2005)).

Tatro v. Kervin, 41 F.3d 9 (1st Cir. 1994) and the "but-for" test has been the clearly established law regarding retaliatory arrests in this circuit for over ten years.

14

Furthermore in 1998 the United States Supreme Court rejected Justice Scalia's proposed "objective test" under which defendants would be entitled to judgment as a matter of law on retaliation claims, regardless of their subjective intent, if some "objectively valid" legal ground existed for their action. Crawford-El, 523 U.S. at 612 (1998) (Scalia, J., dissenting). As explained above, if the court considers the deposition testimony cited in his memorandum, there is a genuine dispute of material fact as to whether there was violation of a clearly established constitutional right.

The difficult analysis occurs under the third prong of the First Circuit qualified immunity standard as it requires the court to determine whether "it would have been clear to an objectively reasonable official, situated similarly to [these defendants], that the actions taken or omitted contravened the clearly established right." Limone v. Condon, 372 F.3d 39, 48 (1st Cir. 2004). Thus, I find myself in the uncomfortable situation of assessing whether a police officer who under one version of the facts made a decision to arrest an individual because he wanted to prevent that individual from exercising his First Amendment rights, acted as an objectively reasonable police officer given the indisputable probable cause for the arrest. One circuit has stated the dilemma thusly, "consider a situation in which law enforcement officers might have a motive to retaliate but there was also a ground to charge criminal conduct against the citizen they disliked. In that situation, the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." Keenan v. Tejeda, 290 F.3d at 261-62. The propriety of conferring Harlow v. Fitzgerald, 457 U.S. 800 (1982) qualified immunity in this sort of "intent-based" constitutional tort is anything but clear based upon the majority opinion in Crawford-El. See 523 U.S. at 602 (Rehnquist, C.J., dissenting). I conclude however,

15

under the facts and circumstances of this case, even if there is some evidence which would support a finding of improper motive, given the indisputable probable cause for the arrest and subsequent guilty plea by Hrichak, Pion and Durham are entitled to qualified immunity.

### *Alleged Perkins Retaliation*

With respect to Captain Perkins's alleged retaliation, Hrichak claims that when he, his wife, and his friend went to the Kennebec County Jail to make a complaint about Pion and Durham, he "was told by Defendant Perkins that he had a meeting to attend right then and simply could not talk to him before Monday, but the Plaintiff spotted Perkins speaking immediately thereafter with the two police officers who arrested and allegedly brutally assaulted him." (Pl.'s Mem. Opp'n Mot. Summ. J. at 8.) If his assertion is true, Hrichak speculates, "Perkins was clearly attempting to keep the Plaintiff from filing his complaint until after he had already spoken with the two offending officers." (Id.) "This suggests, at the very least," Hrichak maintains, "that had Hrichak returned on the following Monday and filed his complaint it would have done him no good; the coverup was already in operation the day of the incident." (Id.)

Hrichak's defense of this claim is built entirely on his speculation that Perkins was in some way deceptive when he told Hrichak that he had a pressing meeting but this is an inference that is simply beyond the pale.  Furthermore, I cannot agree with Hrichak that this conversation he had with Perkins, even when combined with his alleged spotting of Perkins speaking with his own officers immediately afterwards, had any chilling effect on the exercise of his right to seek redress: "Where a chilling effect is speculative, indirect or too remote, finding an abridgment of First Amendment rights is unfounded." Sullivan v.

16

Carrick, 888 F.2d 1, 4 (1st Cir. 1989) (citing United States v. Harris, 347 U.S. 612, 626 (1954)). There is no factual dispute that Hrichak decided not to follow through with his complaint to Perkins after receiving advice from counsel and decided on "filing of the present action" as did the plaintiff in Sullivan, a case in which the First Circuit cited such a decision to litigate as an infirmity in the plaintiff's First Amendment claim. See 888 F.2d at 4.

*Count Three- Negligent Supervision and Training*

The facts set forth above make it crystal clear that Hrichak as not generated a genuine dispute of material fact sufficient to survive summary judgment as to his claim that Sheriff Flannery is liable on a theory that he was negligent in supervising Perkins, Pion, and Durham. Indeed, in his memorandum responding to the defendants' motion for partial summary judgment Hrichak, "concedes that insufficient evidence exists regarding the culpability of Defendant Everett Flannery," and Hrichak does "not oppose his removal as a Defendant." (Pl.'s Mem. Opp'n Mot. Summ. J. at 12.) Therefore, I recommend that the Court grant the defendants' motion for partial summary judgment as to Count Three, the only count in this action which implicates Defendant Flannery.

*Conclusion*

Based upon the foregoing analysis I recommend the court grant the defendants' motion for partial summary judgment as to Count III and as to so much of Count I as asserts a claim against Captain Perkins. I further recommend that court grant the motion as to so much of Count I as alleges a First Amendment retaliation claim against Pion and Durham based upon the doctrine of qualified immunity.

17

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge

April 24, 2007