UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GEORGE T. HRICHAK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil No. 06-59-B-W |
| | ) |
| MICHAEL PION, | ) |
| MICHAEL DURHAM, | ) |
| Defendants. | ) |

## ORDER ON MOTION FOR NEW TRIAL

Despite a jury verdict to the contrary, George T. Hrichak firmly believes that Deputy Sheriffs Michael Pion and Michael Dunham should be held civilly responsible for their alleged use of excessive force against him in effecting an arrest. Claiming three legal errors, two arising from defense counsel's closing argument and one from an evidentiary ruling, he demands a new trial. The Court concludes that no error occurred, much less error that would justify a new trial, and denies his motion.

### I.   STATEMENT OF FACTS

In response to George T. Hrichak's civil action under 42 U.S.C. § 1983, on August 9, 2007, on the third day of a civil jury trial, the jury issued a verdict in favor of Michael Pion and Michal Durham, deputy sheriffs for Kennebec County. *Verdict Form – Michael Pion* (Docket # 63); *Verdict Form – Michael Durham* (Docket # 64). Mr. Hrichak claimed the Defendants had used excessive force in effecting his arrest on September 23, 2005, on the grounds of the Togus

Veterans Affairs Medical Center (Togus). *Am. Compl.* (Docket # 5)  Mr. Hrichak moves for a new trial, citing three claims of legal error.[1]  *Pl.'s Mot. for New Trial* (Docket # 77) (*Pl.'s Mot.*).

## II. DISCUSSION

### A. Legal Standard

In reviewing a motion for a new trial pursuant to Fed. R. Civ. P. 59, "[a] verdict may be set aside and new trial ordered [only] when the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice."  *Colon-Miller v. Sears Roebuck De Puerto Rico, Inc.*, 455 F.3d 30, 35 (1st Cir. 2006) (quoting *Ahern v. Scholz*, 85 F.3d 774, 780 (1st Cir. 1996)).

### B. Improper Summation:  The Booking Photograph

Mr. Hrichak's first claim of error is that defense counsel improperly argued that he was lying "because the T-shirt he was wearing when photographed at the jail was not the T-shirt he testified he was wearing at the time of the altercation with the Defendants." *Pl.'s Mot.* at 1.  Mr. Hrichak asserts that the "issue had not been addressed in testimony, and it was improper and unduly prejudicial for the issue to have been brought up during summation." *Id.*

To set the stage, on September 23, 2005, Mr. Hrichak, a Vietnam veteran, had completed an hour-long counseling session at Togus at about 10:00 a.m. and was in the process of leaving in his motor vehicle when he saw a Sheriff's cruiser proceeding at a high rate of speed through the Togus grounds.  The speed limit on the Togus grounds is twenty miles per hour and the cruiser was proceeding, in Mr. Hrichak's view, too fast, thereby endangering the veterans on the grounds, many of whom are disabled.  Mr. Hrichak resolved to catch up to the cruiser and, as he did so, he clocked the cruiser's speed at thirty-five miles per hour.  The cruiser came to a stop in

---

[1] Mr. Hrichak divides the argument into four separate headings, but two of those headings address the admissibility of the charges and convictions, each of which the Court addresses in Part II(D) below.

the left hand lane while waiting for a red light at the intersection of the Togus access road and Route 15. Mr. Hrichak pulled up to the right of the cruiser. The deputy inside the cruiser and he had words. The officer turned out to be Deputy Michael Pion. Deputy Pion and Mr. Hrichak have markedly different recollections of what ensued.

For purposes of this issue, however, the focus is on a brief part of the exchange between Mr. Hrichak and Deputy Pion. Mr. Hrichak testified that after he had exited his vehicle and approached Deputy Pion, and after Deputy Pion had been joined by Deputy Michael Durham, Mr. Hrichak became concerned about Deputy Pion's aggressive response. Mr. Hrichak asked: "Who's in charge here?" He said that Deputy Pion responded by grabbing his own collar, which had a corporal's insignia on it, sticking it in Mr. Hrichak's face, and saying, "You were in the fucking Army."

On cross-examination, Mr. Hrichak was asked if he knew how Deputy Pion would have known he was in the Army. Mr. Hrichak initially responded, "I guess it's was because I was coming out of Togus, and also, my vehicle has disabled plates, plus the military decals, and so forth on it that would reflect the U.S. Army." Mr. Hrichak was not asked any further questions about this point on redirect examination. During his testimony, Deputy Pion denied he showed Mr. Hrichak his corporal insignia or ever made the statement about the United States Army. He said he had no idea whether Mr. Hrichak was actually in the military or, if so, what branch. On the last day of trial, in rebuttal, Mr. Hrichak took the stand, wearing a baseball cap with "Army" over the brim, an open blue flannel shirt, and a t-shirt that also read "U.S. Army." He testified that on the day of the altercation, with the exception of his blue jeans, he was wearing the same clothes.

The issue came up again in the closing arguments. During his closing argument, Mr. Hrichak's counsel argued that his client was, in fact, wearing the Army baseball cap and t-shirt during the altercation, which allowed Deputy Pion to know which branch of the armed services Mr. Hrichak had served in; counsel used this point to argue that Mr. Hrichak was telling the truth when he claimed that Deputy Pion had aggressively pointed to his insignia and swore at him about the Army. In response, defense counsel referred to Defendant's Exhibit Three, the booking sheet, and noted that Mr. Hrichak's photograph on the booking sheet, which had been taken later that day, did not depict a blue flannel shirt and U.S. Army t-shirt. Defense counsel asserted that Mr. Hrichak was lying about the clothes he was wearing the day of the altercation. During rebuttal, Mr. Hrichak's lawyer asserted – over objection – that the booking photograph depicted Mr. Hrichak in a jail shirt.

In view of this sequence, it is difficult to understand Mr. Hrichak's complaint. This was fair argument about inferences to be drawn from admitted evidence. The booking sheet, including the photograph, had been admitted into evidence and Mr. Hrichak's and Deputy Pion's testimony on the point were contradictory. The booking photograph does not clearly depict Mr. Hrichak wearing the U.S. Army t-shirt; instead, to the extent it shows his clothing, it shows no t-shirt, and may show him in prison garb.

Counsel argued differing inferences from the booking photograph. The Defendants contended that because the clothes in the booking photograph were not the same clothes Mr. Hrichak said he was wearing at the altercation, Mr. Hrichak's testimony, which the deputies contradicted, was not to be believed. They buttressed this argument by pointing out that when initially asked about how Deputy Pion could have known about his branch of service, Mr. Hrichak had not mentioned the most obvious point – that he was wearing an Army cap and t-

4

shirt – and instead referred to Army identifiers on his motor vehicle. Mr. Hrichak's counsel responded that Mr. Hrichak had been wearing clothes with "Army" insignias at the time of the incident, but that he had been given new clothes at the jail.[2] Having heard the arguments, it was within the jury's province to weigh the evidence and to draw its own conclusions.[3] Jacob Stein, *Closing Arguments* 2d § 1:14 (Updated Aug. 2007) ("[C]ounsel is restricted to the law in the case, the evidence adduced from the witnesses, the exhibits admitted into evidence, and the inferences *reasonably deductible* from the testimony and exhibits.") (emphasis added). The arguments of counsel on this issue were not impermissible and are not grounds for a new trial.

### C. Improper Summation – Medical Records and Experts

At trial, Mr. Hrichak claimed he had sustained physical injuries as a result of the altercation with Defendants, including abrasions and contusions, broken blood vessels in his eyes, the loss of his front teeth, a permanent injury to his genitals, a wrenching of his shoulders, and damage to his wrists. He now claims that defense counsel improperly mentioned the absence of medical records and medical experts regarding these injuries, because the evidence was ruled inadmissible due to Defendant's pre-trial motions.

#### 1. Pre-Trial Rulings

The Plaintiff's medical experts were the subject of three pre-trial rulings. On August 2, 2006, Mr. Hrichak served a designation listing the names of four medical experts: Dr. Allen Jervey, a Veteran's Affairs (VA) physician, to testify about the Plaintiff's shoulder; Dr. David Zamarripa, a VA dentist, to testify about his teeth and the need for dental treatment; an unnamed

---

[2] There was no direct evidence on this point, but the Court allowed defense counsel to argue that the jury should draw an inference to this effect.

[3] To put the shoe on the other foot, if the booking photograph had depicted Mr. Hrichak wearing the same clothes that he said he had on, Mr. Hrichak could properly have argued that the photograph was consistent with his testimony. Since the booking photograph showed Mr. Hrichak wearing different clothes, Defendants could properly argue that the photograph was inconsistent with his testimony.

VA urologist to testify about damage to the Plaintiff's genitals; and, an unnamed VA orthopaedic surgeon to testify about damage to his shoulder. *Id.* Ex. A.  On November 15, 2006, the Plaintiff supplemented this designation by listing Dr. John Gregory as his expert urologist and Dr. Myra Altman as his shoulder doctor; neither Dr. Gregory nor Dr. Altman is a VA physician.  The designations did not provide any additional information and were not in compliance with Rule 26 or the Scheduling Order.  On November 22, 2006, the Defendants moved *in limine* to exclude the Plaintiff's medical experts based on his failure to comply with the Scheduling Order and Rule 26(a)(2).  *Defs.' Mot. to Exclude Pl.'s Expert Witnesses* (Docket # 13).  In his response to the motion *in limine*, Mr. Hrichak acknowledged that he had been experiencing difficulty acquiring medical information from the VA, noted that he had resorted to private physicians, and asserted that "the Defendants have been in possession of the Plaintiff's medical records for months." *Op. to Mot. to Exclude Test.* at 2 (Docket # 14).

On December 13, 2006, Magistrate Judge Kravchuk held a telephone conference of counsel on the Defendants' motion *in limine*.  *Report of Telephone Conference and Order* (Docket # 17).  To allow the Plaintiff to complete his expert designations and the Defendants to complete discovery, she extended the discovery deadline to January 22, 2007.  *Id.*  She ruled that "[n]either Dr. Jervey nor Dr. Zamarippa will be called as an expert witness.  If either doctor testifies it will be as a fact witness and/or to authenticate the medical records." *Id.*  The magistrate judge concluded that the expert designation for Dr. Gregory was sufficient and she allowed the Plaintiff to further supplement Dr. Altman's designation.  *Id.*

On February 26, 2007, the Defendants again moved *in limine* on the grounds that the Plaintiff had still failed to comply with the expert discovery requirements.  *Defs.' Mot*. in Limine

6

*to Exclude the Test. of Dr. John Gregory* (Docket # 20). On April 18, 2007, the magistrate judge granted this motion:

> Dr. Gregory is precluded from offering at trial any testimony concerning information or opinions he obtained as a result of his January 30 examination of the plaintiff and the plaintiff is barred from attempting to introduce, through the testimony of Dr. Gregory, any evidence or opinion that the plaintiff's Peyronie's disease was more likely than not caused by the defendants' alleged assault against the plaintiff.

*Order on Mot. to Exclude* at 7.

Finally, on July 27, 2007, the Defendants again moved *in limine* to exclude Dr. Gregory's testimony, since his only knowledge of the Plaintiff's condition came from a medical examination after the discovery deadline had closed. *Defs.' Mot.* in limine (Docket # 52). The Court excluded the proposed testimony of Dr. Gregory as a fact and expert witness, but allowed the Plaintiff to testify about what he felt and allowed Mr. Hrichak and his wife to testify as to what they observed about his genital injuries. *Order on Defs.' Mot.* in Limine (Docket # 64).

## 2. The Testimony, the Closing Arguments, and the Contentions

Mr. Hrichak testified that after he was released on bail, he proceeded to and was seen at the Togus Emergency Room. He further testified that appointments with specialists were made for his shoulders. On cross-examination, he was asked – without objection – whether he had any records regarding his injuries. He responded: "Well, I don't know. They gave me a once going-over. I don't know if they would have jotted it down or not." The Plaintiff introduced no medical or dental records. During his testimony, however, he told the Jury that he had lost his front teeth and that some had fallen out immediately while others had to be removed. He dramatically pulled out of his mouth a dental bridge that appeared to be his four front teeth.

During his summation, defense counsel argued:

> We do know that he wears a bridge. We do know that there are teeth missing. Is there any evidence for how or when that happened? Where is the missing evidence? Where is the dentist? Where is at least a record from somebody – we've got the medical records. Everybody's got them here. Where is the – the record –

At this point, Plaintiff's counsel objected and made a request for a side bar, which the Court denied. Defense counsel went on:

> Where is the record from the dentist's office saying the guy came in on this day and had broken teeth? People lose their teeth for lots of reasons. The Plaintiff has the burden of proving this case to you. He claims he was badly beaten, injured. He went to the emergency room that day. He claims he had broken blood vessels in his eyes, marks on his wrists from the handcuff chain that was supposedly somehow wrapped around his wrists. Where is the evidence? Where is an emergency room record that shows he even went there? Where is the doctor's note saying that there were broken blood vessels? The Plaintiff has the burden of proving this. Think about it. If you get hurt and you're going to sue somebody, you've got – you're going to bring the doctor in. You're going to bring in at least the record. The only medical record in this case from after the incident is Exhibit 63 that I put into evidence that shows that in December he was in there complaining of his left shoulder. He said he had no recent trauma. His answer to that was, they're all wrong; that's not my record. So where is the proof? Did he even go to the hospital that day? I mean, wouldn't you think, if you were badly beaten, to bring that in?

On rebuttal, Mr. Hrichak's attorney stated: "Why didn't his dentist testify? He works for the Veterans' Administration. He's a government doctor. They're not allowed to testify." Defendants' counsel objected to this comment, because there was no evidence about the availability of the VA dentist. The Court sustained the objection and instructed the Jury to disregard the comment and base its verdict solely on the evidence.

Mr. Hrichak contends in his motion for new trial that it was improper for defense counsel to mention the absence of medical records and medical experts whose absence the Defendants had achieved through pre-trial motions. *Pl.'s Mot.* at 2. He states that "[i]t was improper for them to imply [that] such evidence did not exist when the Plaintiff was not allowed to introduce it." *Id.*

8

### 3. Discussion

It is important to note what Defendants did and did not argue during closing. Defense counsel asserted that Mr. Hrichak has the burden of proof, that he has the obligation to present evidence to support his injury claims, that he had failed to produce either the testimony of the dentist or the dental records to support the claim of dental injury, and that no emergency room doctor or emergency room records had been introduced to support the claims of trauma resulting from the altercation. Defendants did not argue that the Jury should draw an inference that if Mr. Hrichak had called the experts or introduced the records, the evidence would have been adverse to him.

It is perfectly permissible for counsel to comment on an opposing party's failure to produce evidence to sustain his burden of proof. *United States v. Jimenez-Torres*, 435 F.3d 3, 12 (1st Cir. 2006) (distinguishing between "a case where the defense highlights missing proof to argue that there was insufficient evidence of the defendant's guilt," which is allowed, and a case where "[a]ttorneys . . . argue that the jury should draw an inference against an opponent where the opponent does not present witnesses that are available to both parties," which is not proper) (citing *United States v. Diaz-Diaz*, 433 F.3d 128 (1st Cir. 2005)). Regarding the absence of a dental expert and dental records, the magistrate judge had expressly allowed the Plaintiff to call Dr. Zamarripa as a fact and authenticating witness. The Plaintiff chose not to do so. This left the Plaintiff vulnerable to an argument that by failing to call a corroborating expert or record, he had failed to sustain his burden.[4]  The Plaintiff is simply incorrect that he was prohibited from

---

[4] The Defendants cite case law on the "missing witness" argument and instruction. Although analogous, the Court views the "missing witness" case law as slightly different from this situation. The missing witness issue arises when a party either asks for an instruction or makes an argument that, "[i]n the absence of a satisfactory explanation, when a party fails to call a witness whom that party would ordinarily produce if the facts known by the witness were favorable to that party, the jury may infer that the absent witness's testimony would have been adverse to that party." *United States v. Ariza-Ibarra*, 651 F.2d 2, 15-16 (1st Cir. 1981). Here, defense counsel did not ask the Jury to infer that if a dentist or dental records had been produced, the evidence would have been adverse to the Plaintiff.

9

calling Dr. Zamarripa, from calling the emergency room doctor, or from calling an authenticating lay witness to corroborate his visits and his condition.  Further, Mr. Hrichak is incorrect in claiming that Defendants argued to the Jury that Mr. Hrichak had failed to produce a witness or records that were not admissible due to prior Court decisions.

### D.     Non-Redacted Exhibit

Mr. Hrichak disputes the Court's decisions regarding an exhibit – a booking document – that he sought admitted, and that, after the Court's ruling that it was admissible only with if redacted, was inadvertently placed in the Jury's view unredacted.

#### 1.     Criminal Charges and Convictions Resulting from the Altercation

As a result of the September 23, 2005 altercation, Mr. Hrichak was charged with disorderly conduct, carrying a knife, obstruction of a public way, assault on an officer, and failure to submit to arrest or detention.  At the outset of his case, Mr. Hrichak attempted to move into evidence the booking document, Defendant's Exhibit Three, which contained a list of all the crimes with which Mr. Hrichak had originally been charged, including assault on an officer and failure to submit to arrest or detention, for which he was not convicted.  Mr. Hrichak testified that, as a result of the incident on September 23, 2005, he was convicted of disorderly conduct, carrying a knife, and obstruction of a public way.

During direct examination, Mr. Hrichak sought to testify about the charges for which he was not convicted; the Defendants objected on the ground of relevance.  Mr. Hrichak's attorney explained why he thought evidence of these charges was relevant:

---

Instead, he pointed out that the Plaintiff has the burden of proof and that the absence of this evidence constituted a failure of that burden.  *Jimenez-Torres*, 435 F.3d at 12.

The classic "missing witness" argument or instruction is more adverse to the non-producing party, consisting of "an inference that [the missing witness's] testimony would be unfavorable to that party." *Id.* at 16 n. 20.  To argue or instruct on a missing witness and the adverse inference, certain requirements must be met, including the need to demonstrate that the witness was "peculiarly available" to the non-producing party. *See United States v. Anderson*, 452 F.3d 66, 81-82 (1st Cir. 2006); *Colon-Millin*, 455 F.3d at 34 n.2; *Steinhilber v. McCarthy*, 26 F. Supp. 2d 265, 279-84 (D. Mass. 1998).

> Those are my client's convictions as a result of this, and also, he was – my client was initially charged with assaulting these two officers. If he were guilty of assaulting the officers, they would have justification for what they did to him, but I'd like to demonstrate that he was overcharged, and there was no basis for it. At the very least it wasn't prosecuted.

The Court ruled that evidence of the charges that did not result in convictions was inadmissible. It noted that the decision about whether and what to charge would have been a matter of prosecutorial discretion, not attributable to the deputies.[5] Thus, Mr. Hrichak could not properly argue the "overcharge" claim in a law suit against the deputy sheriffs.

### 2.     The Inadvertent Disclosure of the Booking Document

Following the Court's ruling, the parties were to redact Defense Exhibit Three to eliminate evidence of the charges that did not result in convictions. Before this was done, however, defense counsel placed the unredacted booking document on a document presenter and showed it to the Jury. His purpose in doing so was not to reveal the unproven charges, but to question the booking officer about other aspects of Defense Exhibit Three. He did so without objection by Mr. Hrichak.

When the Court noticed that the two charges that had not resulted in convictions may have been inadvertently shown to the Jury, the Court brought the issue to counsels' attention in chambers. In view of the fact that Mr. Hrichak had unsuccessfully sought to admit this same evidence, and that it may have been inadvertently shown to the Jury by defense counsel, the Court ruled that Mr. Hrichak would be allowed to "explain to the Jury what charges he actually did plead guilty to and what charges he did not plead guilty to, to clarify Defendant's Exhibit No. 3."

---

[5] In his motion for a new trial, Mr. Hrichak repeats his claim that Deputy Pion made the charging decision: "Keep in mind that Pion's overcharging of the Plaintiff to justify his actions goes to motive . . . ." *Pl.'s Mot.* at 1. Mr. Hrichak must be aware that police officers do not decide whether to charge and what charges to bring. *State v. Raymond*, 737 1999 ME 126, ¶ 9, A2d 554, 556 ("The decision to prosecute an accused . . . lies within the discretion of the prosecutor.").

### 3. Carrying A Concealed Weapon – The *Nolo Contendere* Plea

To complicate the matter, it turned out that, contrary to his earlier testimony, Mr. Hrichak had not actually pleaded guilty to carrying a concealed weapon; he had pleaded *nolo contendere*. Further, Mr. Hrichak's counsel asserted that Mr. Hrichak's decision to plead *nolo contendere* to the concealed weapons charge was the result of an error on his then-lawyer's part, since the blade on the knife was too short to constitute a dangerous weapon under Maine criminal law.[6] The Court suggested that, upon Mr. Hrichak's request, it would instruct the Jury that they were not to consider any evidence of charges which did not result in a conviction. Mr. Hrichak's attorney responded: "Sounds good."

### 4. Further Controversy, Plaintiff's Request to Poll the Jury, and the Court's Ruling

When the parties gathered in the courtroom, however, Mr. Hrichak's attorney stated that he wanted to "state on the stand all of the charges. He feels that everything he was charged with should be brought out, and I believe that is his right." The parties discussed how the *nolo contendere* plea should be addressed. Mr. Hrichak's attorney suggested the Jury be polled as to whether they had seen the charges on Defendant's Exhibit 3; the Court refused to poll the Jury. The Court ruled that if Mr. Hrichak wished to do so, he could testify about the charges that did not result in conviction, except he could not testify about the *nolo contendere* plea. The Court

---

[6] The concealed weapons charge was not relevant to the issues in the case. There was no claim by deputies that they were aware of Mr. Hrichak's possession of a knife until after the arrest was completed and, therefore, the knife had nothing to do with the altercation and nothing to do with this lawsuit. Further, the probative value of evidence about the *nolo contendere* plea and its legal implications would have been substantially outweighed by confusion of the issues and the risk of misleading the Jury. Finally, Mr. Hrichak made it clear that he wished to attack the *nolo contendere* plea on the ground that his criminal defense lawyer had given him erroneous advice, which had led him to enter the plea, and to use the civil trial to attack the legality of his plea. This evidence would have been inadmissible on relevance grounds under Fed. R. Evid. 402. Fed. R. Evid. 401 ("Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Evidence regarding allegedly erroneous advice about the criminal plea was not relevant to the issues in this § 1983 case. Fed. R. Evid. 402.

also informed Mr. Hrichak that he could simply leave the matter alone. After further discussing the issue with his client, Mr. Hrichak's attorney stated: "It won't be brought up."

### 5. Discussion

This is much ado about nothing. Regarding the concealed weapons charge, Mr. Hrichak himself revealed the charge to the jury and then objected to evidence of that same charge in the booking document. Mr. Hrichak was in no position to object to evidence that he had already placed before the Jury.

Regarding the charges that did not result in conviction – the assault and failure to submit to arrest or detention charges – Mr. Hrichak sought to testify about the disposition of those charges during his direct examination and it was the Defendants who objected. Later, the Court offered to allow Mr. Hrichak to testify that they had not resulted in convictions. Mr. Hrichak immediately took the opposite tack and argued that it was unfair for the Jury to have viewed the evidence he had earlier sought to admit and now complains of "unfair taint." *Pl.'s Mot.* at 1-2. Finally, when offered the opportunity to present explanatory testimony, Mr. Hrichak elected not to do so and instead proclaimed that "it won't be brought up."[7]

The Court views Mr. Hrichak's abrupt change of tactics and complaints of "unfair taint" with utmost skepticism. It is perhaps true, as Ralph Waldo Emerson said, that "a foolish consistency is the hobgoblin of little minds," but to claim legal error from the admission of

---

[7] The Court rejected Mr. Hrichak's request to poll the members of the Jury about whether they had actually seen the charges on the booking sheet. It was speculative at best whether the Jury had seen the charges, which would only have been briefly displayed through a projector. If the Jury had not seen the charges, to ask the Jury whether they had seen the charges would have alerted them to the fact of the charges. If they had seen the charges, to ask them whether they had seen them would have placed undue emphasis on a collateral matter. *See, e.g.*, *United States v. Nazzaro*, 889 F.2d 1158, 1167 (1st Cir. 1989) (stating, in the context of potentially prejudicial newspaper articles published while an unsequestered jury was deliberating, that "[t]he judge in a criminal case need not automatically accede to a voir dire request whenever the boggart of possible prejudicial influence is raised by a party in interest. Rather, the law wisely affords the trier-who is on the front lines, sensitive to the nuances of the case before him-substantial discretion in determining whether to interrogate jurors, and if so, when and how"); *United States v. Mikutowicz*, 365 F.3d 65, 75 (1st Cir. 2004) (concerning potential juror misconduct, stating that "the district court acted within its considerable discretion by declining to investigate the matter").

evidence that the now-objecting party himself earlier sought to admit amounts to purely opportunistic tactical inconsistency, seeking to create an impression of unfairness where none exists.[8]  Ralph Waldo Emerson, Essays: First Series, Self-Reliance (1841).

## III.    CONCLUSION

The Court DENIES George T. Hrichak's motion for new trial (Docket # 77).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of November, 2007

---

[8] The Court's ruling is analogous to the general rule that "a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted." *Ohler v. United States*, 529 U.S. 753, 755 (2000).  Here, Mr. Hrichak attempted to admit an unredacted document, which the Court ruled that it could be admitted only if redacted.  Mr. Hrichak cannot now claim error because the unredacted document was briefly shown to the Jury.